UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHERIDAN ARLAND LANE, II, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:19-CV-1904 SPM |
| BRENDA SHORT, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of *pro se* plaintiff Sheridan Arland Lane, II for leave to commence this action without prepayment of the required filing fee. Plaintiff was a pretrial detainee at the Jefferson County Jail when he filed his complaint on July 8, 2019. On July 11, 2019, Plaintiff filed a change of address notice with the Court indicating that he had been released from incarceration. Because plaintiff was released from confinement shortly after filing the instant action, the Court will grant his request to proceed *in forma pauperis* and will not assess an initial partial filing fee at this time. Additionally, for the reasons discussed below, the Court will give plaintiff the opportunity to file an amended complaint.

**Filing Fee**

Under 28 U.S.C. § 1915(b)(1), when a prisoner brings a civil action *in forma pauperis*, the prisoner must pay the full amount of the filing fee, usually in the form of an initial partial payment then installment payments over time. However, a non-prisoner plaintiff can litigate without payment of any fees if he qualifies under the general *in forma pauperis* provision of 28 U.S.C. § 1915(a)(1).

"Federal circuit authority is split on the question of whether the PLRA prison litigation provisions of § 1915 continue to govern if and after the prisoner is released *pendente lite* (that is,

during the litigation). The Fifth, Seventh and District of Columbia Circuits have held that the full payment requirement is triggered upon the filing of the (as applicable) complaint or notice of appeal. … The Second, Fourth, Sixth and Tenth Circuits have concluded to the contrary, that the requirements of the PLRA do not continue to apply after the plaintiff is released." *Putzer v. Attal*, 2013 WL 4519351, at *1 (D. Nev. Aug. 23, 2013) (internal citations omitted).

The Eighth Circuit has not ruled on this issue. However, in this case, plaintiff was released shortly after filing this case and before the Court had ruled his motion for *in forma pauperis* and ordered an initial partial payment. Therefore, the Court will consider plaintiff as he currently stands at the time of the review of his motion – as a non-prisoner plaintiff under 28 U.S.C. § 1915(a)(1). Based on the financial information submitted, the Court finds that plaintiff does not have sufficient funds to pay the filing fee and will grant his motion.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a *pro se* complaint under 28 U.S.C. § 1915, the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the *pro se* plaintiff that assumed facts that had not been pleaded).

**Background and the Complaint**

Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights based on events that occurred while he was a pretrial detainee at the Jefferson County Jail. Plaintiff names eight defendants in their individual and official capacities: (1) Brenda Short (Jail Administrator); (2) David Marshak (Jefferson County Sheriff); (3) Unknown Day (Officer); (4) Jefferson County, Missouri; (5) Unknown Shannon (Medical Staff); (6) Unknown Melonie (Medical Staff); (7) Unknown Shantel (Medical Staff); and (8) Dr. Fatopi.

Plaintiff's complaint is long and difficult to understand. Some background is helpful. A review of the Court's records indicates that plaintiff filed a different § 1983 case with this Court about six weeks before filing this case. *See Lane v. Shiele*, No. 4:19-cv-1408-RWS (E.D. Mo. May 22, 2019). Although *Lane v. Shiele* names different defendants, the complaint in that matter

provides some background information for understanding plaintiff's preexisting injuries and medical conditions prior to his detention at the Jefferson County Jail.[1]

According to plaintiff's *Lane v. Shiele* complaint, plaintiff was released from St. Louis University ("SLU") Hospital on July 3, 2019, after receiving medical care for a broken pelvis, broken left clavicle, and two collapsed lungs. Five days later, on July 8, 2019, plaintiff was stopped by Pevely police officers as part of a routine traffic stop. Plaintiff alleges that the officers used excessive force when arresting him during that traffic stop. The force caused damage to his healing injuries. This July 8th arrest lead to plaintiff's detention at the Jefferson County Jail.

As for the complaint in the instant matter, plaintiff's main allegation is that he received inadequate medical follow-up care for his injuries while detained at the Jail. He states that his medical treatment was "neglected," he was given the wrong medications, he did not receive needed physical therapy, and he did receive the proper medical tests and X-rays. According to plaintiff, his SLU physician diagnosed him with nerve damage and knee/joint separation but once he was detained, he was told by medical staff that those injuries could wait until his release for treatment. Plaintiff alleges that he had MRSA (staph infection) for four months while the Jail told him he was fine. He says that he was finally taken to the hospital "due to [his] collar bone opening up and the titanium plate [being] exposed" and he was placed in immediate surgery. ECF No. 1 at 4-5. Plaintiff asserts that he had two surgeries due to neglected medical care – in September and November 2018 – one of which was because the MSRA infection required the removal of the titanium from his clavicle. *Id.* at 5, 10. Plaintiff also had to endure a catheter for five days which has caused scarring in his urethra. Overall, plaintiff alleges that the lack of

---

[1] The Court takes judicial notice of its records regarding this related civil proceeding. See *Lockett v. United States*, 333 F. App'x 143, 144 (8th Cir. 2009) (citing *Chandler v. United States*, 378 F.2d 906, 909-10 (9th Cir. 1967) (district court can take judicial notice of its own records)).

adequate medical care at the Jefferson County Jail has caused him severe pain and lifelong medical problems including: left clavicle scarring; erection/ejaculation problems; nerve damage to his right hand and right thigh making it difficult to stand and walk for long periods and causing numbness while sleeping; improper healing of his pelvis causing bladder problems; and left knee problems comprising misalignment, inability to run or jump, and limping. Plaintiff worries that as a young man of only 35 years, he may never be able to run and play with his children or even conceive more children with his wife, as a result of the negligence of the Jail medical staff.

Plaintiff states that Jail Administrator Brenda Short told him that he had only himself to blame for his injuries, she denied his requests to be seen by "proper" medical staff, and she refuses to have the County pay his medical bills. ECF No. 1 at 7, 15. Plaintiff alleges that he was told by Short that the Jail is not responsible for any medical issue that happened to plaintiff prior to his arrest, or any medical expense resulting from such preexisting conditions. *Id.* at 15.

Plaintiff states that defendant officer Unknown Day transported him to SLU hospital on November 14, 2018. Plaintiff says that he was "treated horribly" and inhumanely by Day, and that she was rude and unprofessional. ECF No. 1 at 5-6, 9. Plaintiff states that Day, a female officer, violated his privacy by not turning away when his catheter was removed[2] and by being present during his surgery. *Id.* at 8. Despite plaintiff's left arm being numb, Day handcuffed his right arm to the hospital bed and told him "to figure out how to eat." *Id.* at 9. Plaintiff had to be assisted by the nursing staff. During his hospital stay, plaintiff alleges that Day wouldn't allow the nurses to help him get comfortable at all; she controlled the TV, lights, and window shades while watching Netflix on her phone and laughing loudly. Upon his release from SLU Hospital,

---

[2] Plaintiff states that the "catheter incident happened around Oct. 2018," whereas the rest of his allegations against defendant Day occurred during his November 2018 hospital stay. ECF No. 1 at 9.

plaintiff's physician informed him that he should stay in the Jail infirmary but when plaintiff informed him that Jefferson County Jail did not have such a facility, Day told him to "shut up" and told the physician that the Jail had 24-hour medical care and an infirmary. Day also told the hospital that plaintiff was responsible for paying his own medical bills. *Id.*

Plaintiff alleges that the entire medical staff of Vital Core Health ignored his medical problems and did not diagnosis his MRSA infection promptly. They repeatedly told him that the staph was just a skin/muscle growth on the outside of his incision and even when the incision opened, plaintiff still had to wait three days to be taken to the hospital. Nurse Shannon was on duty the morning plaintiff "raised hell" about being taken to the hospital for treatment and she told him to wait and see the doctor. ECF No. 1 at 7. Plaintiff states that Dr. Fatopi was constantly misdiagnosing his medical problems and ordering the wrong medical tests. *Id.* In the "Additional Information" section of his complaint, plaintiff alleges generally that the Jail has often been out of his medications, he was given medications without seeing a doctor, and that he was prescribed the wrong medications that either did not work or made his problems worse. *Id.* at 11. Plaintiff states that he complained for eleven (11) months about nerve damage, testicular pain, and not getting an erection or being able to ejaculate, but that he was told that nothing is wrong, the medical tests are accurate, and that he can get medical care once released. Plaintiff states that the Jail does not have 24-hour medical care and that the Jail staff overlooks serious conditions. Plaintiff states that he talked to "Nurse Shannon, Nurse Melonie, and Nurse Shantel as well as the Dr. Fatopi" about his medical complaints and they told him that the Jail gives the same medical tests as a hospital. *Id.* at 16.

As for defendant Sheriff David Marshak, plaintiff alleges that he is the supervisor of employee defendants Day, Short, and the entire Jail medical staff and therefore they are his responsibility. Plaintiff asserts that Marshak hired them and failed to oversee their decisions

regarding his complaints. Plaintiff alleges Marshak failed in his duty "to make sure us (inmates) are treated fairly and properly and all our needs and rights are met." ECF No. 1 at 8. Similarly, as to defendant Jefferson County, Missouri, plaintiff alleges the County is responsible for all of its employees and their actions since the County hired them. *Id.* at 9-10.

Plaintiff also makes other general complaints about the Jail in the "Additional Info" section of his complaint. ECF No. 1 at 10-11. Plaintiff complains that the Jail has taken his mail; opens his legal mail; doesn't let him see his own doctors and when he does get to see them, he has to pay his own medical bills; puts "stackabunks" on the floor of a two-man cell; has a mold problem; won't provide him with copies of his grievances; and sometimes has correctional officers pass out medications without wearing gloves. *Id.* at 10-11.

Plaintiff attached to his complaint handwritten "Medical Logs" with dated entries from March 26, 2019 to April 22, 2019 describing his medical care and complaints. ECF No. 1-2. On the March 26, 2019 entry, plaintiff states that he has complained to the nursing staff about pain and persistent medical problems and "they just tell me to pay the fifteen dollars to see the doctor." *Id.* at 4. Plaintiff notes that the Jail is giving him Tylenol for pain and Flomax for his urinary problems. According to plaintiff, every time he talks to the medical staff at the Jail "they tell [him] they are gonna charge [him] to see the doctor/nurse" and plaintiff states that he can't afford these costs but that he has all these medical problems because the Jail has not allowed him to "follow up with [his] doctors at SLU." *Id.* at 3. Plaintiff noted that he saw a doctor on April 18, 2019 who told him that there was nothing he could do about plaintiff's nerve pain. The doctor did order a left knee x-ray that was done the following day and found no issues. Plaintiff was given a knee brace though. The doctor also told plaintiff he would be put on a "prostate pill," which resulted in an increase in plaintiff's Flomax medication. *Id.* at 1-2.

For relief, plaintiff would like the defendants to be charged with prisoner/medical abuse and neglect, and to be terminated from employment. He would like all future Jail employees to do required training. Plaintiff also seeks $800,000 in damages from each defendant. *Id.* at 12.

**Discussion**

Many of plaintiff's allegations fail to state a claim upon which relief may be granted and are subject to dismissal under 28 U.S.C. § 1915(e)(2). First, "[a] supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). "[A] supervisor's liability arises if: 'he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.' " *Tlamka*, 244 F.3d at 635 (*quoting Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)). Plaintiff asserts allegations of medical mistreatment against Jail medical staff; however, plaintiff does not assert that Jail Administrator Brenda Short or Sheriff David Marshak had any supervisory or training responsibility over these medical staff members.

Second, the complaint fails to state an official-capacity claim against any defendant. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). A sheriff's office, as a department or subdivision of local government, is not an entity subject to suit. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (1992) (departments or subdivisions of local

For relief, plaintiff would like the defendants to be charged with prisoner/medical abuse and neglect, and to be terminated from employment. He would like all future Jail employees to do required training. Plaintiff also seeks $800,000 in damages from each defendant. *Id.* at 12.

**Discussion**

Many of plaintiff's allegations fail to state a claim upon which relief may be granted and are subject to dismissal under 28 U.S.C. § 1915(e)(2). First, "[a] supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). "[A] supervisor's liability arises if: 'he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.' " *Tlamka*, 244 F.3d at 635 (*quoting Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)). Plaintiff asserts allegations of medical mistreatment against Jail medical staff; however, plaintiff does not assert that Jail Administrator Brenda Short or Sheriff David Marshak had any supervisory or training responsibility over these medical staff members.

Second, the complaint fails to state an official-capacity claim against any defendant. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). A sheriff's office, as a department or subdivision of local government, is not an entity subject to suit. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (1992) (departments or subdivisions of local

government are "not juridical entities suable as such"). However, a local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Here, plaintiff has not alleged that Jefferson County has any unconstitutional policy or custom that makes it liable for the alleged violations of plaintiff's constitutional rights.

Third, a prisoner generally cannot expect to enjoy the same right to privacy that a person in free society does. *See Hudson v. Palmer*, 468 U.S. 517, 522-30 (1984). A "prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security." *Id.* at 528. The infringement of an inmate's right to privacy is to be weighed against legitimate institutional interests. *Lee v. Downs*, 641 F.2d 1117, 1119-21 (4th Cir. 1981). In this case, plaintiff alleges Officer Day violated his right to privacy by being present during medical procedures where his genitals were in view. Plaintiff's factual allegations are inadequate to state a violation of his right to bodily privacy especially given his medical procedures occurred outside the Jail facility where security is a paramount interest.

Fourth, allegations of discomfort or inconvenience do not rise to the level of a constitutional violation. *Morris v. Zefferi,* 601 F.3d 805, 809-10 (8th Cir. 2010), *Williams v. Delo*, 48 F.3d 442, 446 (8th Cir. 1995. Plaintiff's allegations regarding buck bed spacing and moldy shower curtains do not state valid claims.

Fifth, plaintiff has no right to free medical care. Although "the injured detainee's constitutional right is to receive the needed medical treatment," he has no right to have it paid for. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983). It is constitutionally permissible for a detention center to charge a detainee the cost of medical care. *Id.* ("[A]s long

as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law.").

However, although many of plaintiff's claims are subject to dismissal, the complaint lays the foundation for a valid medical mistreatment claim. As a pretrial detainee at Jefferson County Jail, the County can "subject [plaintiff] to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). "Although 'the Eighth Amendment has no application' until there has been a 'formal adjudication of guilt,' the Fourteenth Amendment gives state pretrial detainees—just as the Fifth Amendment gives federal pretrial detainees—rights which are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.' " *Walton v. Dawson*, 752 F.3d 1109, 1116-17 (8th Cir. 2014) (emphasis omitted) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

The Eighth Amendment protects plaintiff from a confinement that involves cruel and unusual punishment. To state a claim for medical mistreatment under the Eighth or Fourteenth Amendment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Vaughn v. Greene County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates.") (internal citation omitted); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Eighth Amendment); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995) (same). Allegations of mere negligence in giving or failing to supply medical

treatment will not suffice.  *Estelle*, 429 U.S. at 106.  In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs.  *Vaughn*, 438 F.3d at 850; *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care.  *Estelle,* 429 U.S. at 104-05.  When a delay in treatment is alleged to have violated an inmate's constitutional rights, the objective severity of the deprivation should also be measured by reference to the effect of the delay in treatment.  *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (internal quotations and citations omitted).

Here, plaintiff alleges that a delay or denial of adequate medical care caused him to have two surgeries that would not have otherwise been needed.  Plaintiff also asserts that his surgical wound was infected with staph for four months without proper treatment and even after the wound opened, it still took three days for the staff to get him to the hospital for immediate surgery.  These allegations constitute a deliberate indifference claim; however, the complaint is not clear on which defendants actually knew of, but deliberately disregarded plaintiff's medical needs.

The Federal Rules of Civil Procedure require litigants to formulate their pleadings in an organized and comprehensible manner.  Even *pro se* litigants are obligated to plead specific facts as to each named defendant and must abide by the Federal Rules of Civil Procedure.  *See U.S. v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); Fed. R. Civ. P. 8(a)(2) (complaint should contain short and plain statement of claims); Fed. R. Civ. P. 8(d)(1) (each claim shall be simple, concise, and direct); Fed. R. Civ. P. 10(b) (parties are to separate their claims within their pleadings and the contents of which shall be limited as far as practicable to a single set of circumstances).  Plaintiff

is required to set out not only his alleged claims in a simple, concise, and direct manner, but also the facts supporting his claims as to each named defendant.

Because plaintiff is proceeding *pro se* and the allegations of his complaint are serious in nature, the Court will give him the opportunity to file an amended complaint. Plaintiff is advised that the amended complaint will replace the original. *See In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). Plaintiff must **type or neatly print** the amended complaint on the Court's prisoner civil rights complaint form, which will be provided to him. *See* E.D. Mo. L.R. 45 – 2.06(A) ("All actions brought by pro se plaintiffs or petitioners should be filed on Court-provided forms").

In the "Caption" section of the complaint form, plaintiff must state the first and last name, to the extent he knows it, of the defendant or defendants he wants to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Plaintiff must avoid naming anyone as a defendant unless that person is directly related to his claim. Plaintiff must also specify the capacity in which he intends to sue each defendant.

In the "Statement of Claim" section, plaintiff should begin by writing a defendant's name. In separate, numbered paragraphs under that name, plaintiff should write the specific facts supporting his claim or claims against that defendant. If plaintiff is suing more than one defendant, he should proceed in the same manner with each one, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the factual allegations supporting his claim or claims against that defendant. Plaintiff should only include claims that arise out of the same transaction or occurrence, or simply put, claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single

defendant, and set forth as many claims as he has against him or her. *See* Fed. R. Civ. P. 18(a). Plaintiff's failure to make specific factual allegations against any defendant will result in that defendant's dismissal.

It is important that plaintiff allege facts explaining how each defendant was personally involved in or directly responsible for harming him. *See Madewell*, 909 F.2d at 1208. It is not enough for plaintiff to refer to a group of defendants and make general allegations against them. Instead, plaintiff must explain the role of each defendant so that each defendant will have notice of what he or she is accused of doing or failing to do. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim.").

Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). The Court will give plaintiff thirty days to file the amended complaint.

### Appointment of Counsel

Finally, plaintiff's motion for appointment of counsel will be denied without prejudice to refiling at a later time. There is no constitutional or statutory right to appointed counsel in civil cases. *See Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). To determine whether to appoint counsel, the Court considers several factors, including whether: (1) the plaintiff has presented non-frivolous allegations supporting his or her prayer for relief; (2) the plaintiff will substantially benefit from the appointment of counsel; (3) there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) the factual and legal issues presented by the action are complex. *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005. After considering these factors, the Court finds that

the facts and legal issues involved in plaintiff's case are not so complicated that the appointment of counsel is warranted at this time. In addition, the motion is premature, as no defendant has been served with process and discovery has not begun. The Court will therefore deny the motion for the appointment of counsel without prejudice, and will entertain future motions for the appointment of counsel, if appropriate, as this litigation progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed *in forma pauperis* [ECF No. 3] is **GRANTED**. The filing fee is waived in this matter.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail to plaintiff a blank copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff must file an amended complaint within **thirty (30) days** from the date of this Order.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED without prejudice**.

**Plaintiff's failure to timely comply with this order may result in the dismissal of this case, without prejudice and without further notice.**

                                                   */s/ Shirley Padmore Mensah*
                                              SHIRLEY PADMORE MENSAH
                                              UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of November, 2019.